U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
FILED   OCT 17 2019
CLERK

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BILL OF INFORMATION FOR BANK FRAUD, WIRE FRAUD,
AND FORFEITURE ALLEGATIONS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19-136-JWD-EWD |
| | : | |
| | : | 18 U.S.C. § 1344(2) |
| versus | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 2 |
| | : | 18 U.S.C. § 981(a) |
| MICHAEL ALLEN WORLEY | : | 28 U.S.C. § 2461(c) |

**THE UNITED STATES ATTORNEY CHARGES:**

At all times relevant to this Bill of Information:

1. **MICHAEL ALLEN WORLEY** ("**WORLEY**"), the defendant herein, was a resident of Zachary, Louisiana. **WORLEY** was the CEO of Worley Claims Services, LLC until 2017. **WORLEY** was also the owner and/or operator of several businesses including a sporting goods store, a tavern and bed and breakfast, and various holding companies including W Resources, LLC. **WORLEY** obtained loans and lines of credit on behalf of himself and the businesses he owned, operated, or controlled. **WORLEY** maintained offices in Hammond, Louisiana, in Baton Rouge, Louisiana, and elsewhere.

2. Individual A was employed as **WORLEY's** personal assistant at Worley Claims Services, LLC from in or about March 1998 until in or about June of 2017.

3. Individual B was employed as **WORLEY's** personal assistant at W Resources, LLC from in or about July 2017 until in or about May 2018.

4. Individual C was an investment broker who specialized in connecting clients

with sources of financing. In 2015, **WORLEY** and his company, W Resources, LLC, retained Individual C to assist **WORLEY** in obtaining financing for himself and for W Resources, LLC from various lenders.

5. Worley Claims Services, LLC ("WCS") was a corporate entity organized under the laws of Delaware and located in Hammond, Louisiana. In 2014 **WORLEY** sold WCS, but retained the title of CEO until he left WCS in 2017.

6. W Resources, LLC ("W Resources"), was a holding company that owned real estate and mineral rights, and other limited liability companies. **WORLEY** was majority owner of W Resources. **WORLEY** obtained loans for W Resources, which he personally guaranteed, and often listed assets owned by W Resources on financial statements he submitted to banks and others in order to obtain loans.

7. Sqor, Inc., ("Sqor") was a Delaware corporation founded in 2011, whose primary business was the operation of a social media platform with a focus on professional sports and athletes. Worley was on the board of directors of Sqor and was a shareholder and investor of Sqor.

8. Accounting Firm 1 was a certified public accounting and consulting firm serving the Baton Rouge, New Orleans, and Denham Springs markets. Accounting Firm 1 provided accounting, tax, audit, and consulting services. **WORLEY** engaged Accounting Firm 1 in or about February 2016 to prepare a statement of financial condition, which **WORLEY** used to secure loans.

9. The Highlands Bank ("THB") was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation. THB serviced customers through offices located in the Middle District of Louisiana and elsewhere until it was acquired by

Investar Bank in 2017, after which it continued to do business as Investar Bank.

10. United Mississippi Bank ("UMB") was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation. United Mississippi Bank was headquartered in Natchez, Mississippi.

11. NCC Financial, LLC ("NCC"), was a Houston, Texas-based private lending fund that was formed primarily to provide bridge loans to individuals and businesses. NCC made two (2) loans to **WORLEY**.

12. Callais Capital Management, LLC ("CCM"), was a Thibodaux, Louisiana-based private lending fund registered as an investment advisor with the Financial Industry Regulatory Authority ("FINRA"). CCM made four (4) loans to Sqor, and two (2) loans to W Resources, all of which were personally guaranteed by **WORLEY**.

## BANK FRAUD SCHEME

13. Paragraphs 1 through 10 of this Bill of Information are incorporated herein by reference as factual allegations.

**The Scheme:**

14. Beginning at least in or about June 2014, through in or about January 2018, within the Middle District of Louisiana and elsewhere, **MICHAEL ALLEN WORLEY**, the defendant herein, did knowingly execute and attempt to execute a scheme and artifice to obtain money, funds, credits, assets, and other property from, belonging to, and under the custody and control of the following financial institutions, by means of material false and fraudulent pretenses, representations, and promises.

**Purpose of the Scheme:**

15. The purposes of **WORLEY**'s scheme were:

   a. To obtain monies, funds, assets, and other property owned by and under the custody and control of the financial institutions, by means of materially false and fraudulent pretenses, representations, and promises; and

   b. For **WORLEY** to unlawfully enrich himself by obtaining funds under the control of the financial institutions.

**Manner and Means:**

16. In furtherance of the scheme and to accomplish the purposes of the scheme, **WORLEY** used the following manner and means to commit, and to cause to be committed, the following acts, among others, in the Middle District of Louisiana and elsewhere:

   a. **WORLEY** applied for loans with various financial institutions on behalf of himself and on behalf of corporate entities he owned, operated, or controlled.

   b. **WORLEY** personally guaranteed loans that he sought on behalf of these corporate entities.

   c. As part of each loan application process, and with the assistance of Individuals A and B, **WORLEY** prepared personal financial statements in which he made materially false and fraudulent representations, including:

   i. **WORLEY** overstated his income and assets;

   ii. **WORLEY** misrepresented the amount of cash he had on hand;

   iii. **WORLEY** overstated the amount of equity he owned in WCS;

   iv. **WORLEY** omitted debts, mortgages, liabilities, and notes

4

payable;

        v.    **WORLEY** listed and/or pledged property or assets as collateral without disclosing that said property was already encumbered by other outstanding debt;

        vi.    **WORLEY's** net worth was overstated.

    d.    **WORLEY** personally transmitted, and caused Individual A to transmit the materially false and fraudulent personal financial statements to various financial institutions as part of loan applications for **WORLEY** personally, and for corporate entities he owned, operated, or controlled.

    e.    In some instances, **WORLEY** personally transmitted, or caused Individual A to transmit, multiple false and fraudulent personal financial statements to different financial institutions on the same day, that contained different misrepresentations, depending on the recipient of the personal financial statement.

    f.    In order to lull financial institutions into believing that their loans were not in danger of default, to extend the maturity periods for his existing loans, to refinance existing loans, and to obtain additional loan proceeds, **WORLEY** continued to submit false information to the financial institutions, including personal financial statements that falsely inflated his net worth.

    g.    **WORLEY** also sent financial institutions other false and fraudulent information concerning the status of his financial condition, for example:

        i.    On February 27, 2017, **WORLEY** emailed UMB a false and fraudulent Mississippi real estate purchase contract containing a forged buyer's signature, and which purported to show that a piece of property **WORLEY** owned or controlled was under

contract for sale for $2.4 million. In part in reliance on this contract, UMB extended **WORLEY** an additional $500,000 loan, and agreed to extend the maturity of **WORLEY's** existing debt obligations.

      h.    **WORLEY** misrepresented the true purpose(s) for which he was seeking financing for himself and for his corporate entities, for example:

          i.    On December 22, 2014, and at other times, **WORLEY** falsely represented to THB that he would use the proceeds of a $7.8 million line of credit in order to purchase additional stock in WCS. Instead, **WORLEY** used at least some of the proceeds to repay money he had taken from WCS, and to repay other debts that he had not disclosed to THB.

    17.    As a result of this scheme, **WORLEY** and the businesses he owned, operated, or controlled, fraudulently obtained over $18,000,000 in loan proceeds from various financial institutions. In some instances, **WORLEY**, and these corporate entities, defaulted on the loans, causing the financial institutions to suffer financial losses.

**Acts in Execution of the Scheme:**

**COUNT ONE**
**(Bank Fraud)**

    18.    In order to execute and attempt to execute the scheme, and to accomplish the purposes of the scheme, on or about November 5, 2014, as part of both a loan refinance and new line of credit application the defendant, **MICHAEL ALLEN WORLEY** submitted and caused to be submitted a personal financial statement and other documents to The Highlands Bank, a financial institution whose deposits were then insured by the Federal Deposit Insurance Corporation, that contained materially false and fraudulent representations, including the

amount of cash he had on hand, the amount of business equity he owned in WCS, the purpose of the line of credit, and that materially omitted various outstanding loan obligations. **WORLEY** personally guaranteed the new line of credit. The Highlands Bank relied on the accuracy of these statements to disburse approximately $7,824,651.00 in financial institution funds to W Resources, LLC, allowing **WORLEY** and W Resources, LLC, to obtain the funds for personal enrichment.

The above is a violation of Title 18, United States Code, Sections 1344(2) and 2.

## WIRE FRAUD SCHEME

19. The allegations contained in paragraphs 1 through 8, 11, and 12 are hereby re-alleged and incorporated herein by reference as factual allegations.

### The Scheme:

20. Beginning in or about October 2015, and continuing through in or about October 2017, in the Middle District of Louisiana and elsewhere, **MICHAEL ALLEN WORLEY**, defendant herein, devised and intended to devise a scheme to defraud, that is, to obtain money and property from various private equity firms by means of materially false and fraudulent pretenses, promises, and representations, and for the purpose of executing the scheme, did knowingly cause interstate wire communications to be used between the Middle District of Louisiana and locations outside the State of Louisiana.

### Purpose of the Scheme:

21. The purpose of the scheme was to obtain money from various private equity funds for himself and for businesses he owned, operated, controlled, or assisted, by means of materially false and fraudulent pretenses, promises, and representations.

**Manner and Means:**

22. The scheme to defraud private equity funds was executed in the following manner:

    a. **WORLEY** engaged the services of Individual C to help find private equity funds that could furnish loans to W Resources, Sqor, and for himself personally.

    b. **WORLEY** personally guaranteed the loans that he sought on behalf of W Resources and Sqor.

    c. As part of the loan application process to some of the private equity funds, **WORLEY** prepared personal financial statements with the assistance of Individual A that contained materially false and fraudulent information, and that overstated **WORLEY's** net worth. These materially false and fraudulent statements included inflated income amounts, inflated cash on hand, and material omissions concerning the true nature and extent of his outstanding debt obligations. **WORLEY** also pledged property as collateral without disclosing that said property was already encumbered through other outstanding debt.

    d. **WORLEY** personally transmitted, and caused Individual A to transmit the false and fraudulent personal financial statements to various private equity funds as part of personal loan applications for himself as well as corporate entities he owned, operated, controlled, or assisted.

    e. **WORLEY** used the loan proceeds for purposes other than what he represented to the private equity funds, including to pay off debts that were not disclosed in his loan applications, for example:

    i. In or about October 2015, **WORLEY** represented to NCC that he would use the proceeds of an $8 million loan in order to pay and settle tax liabilities due and owing to the Internal Revenue Service ("IRS"). As proof of his use of the loan proceeds, on October 27, 2015, **WORLEY** emailed NCC a photograph of two personal checks made payable to the IRS, for $5,000,000 and $4,122,602, respectively, which he represented had been, or were in the process of being delivered to the IRS that same day. **WORLEY** never delivered either check to the IRS. Instead, **WORLEY** used only $4 million of the loan proceeds from NCC to pay the IRS, and used $3.2 million of the loan proceeds to repay money he had taken from WCS.

    f. **WORLEY** also submitted other documentation to private equity funds that was false, for example:

    i. On or about October 28, 2015, **WORLEY** sent NCC an email containing a screenshot of an online bank account balance as of October 26, 2015, which screenshot had been altered to show that **WORLEY** had approximately $5.9 million in a JP Morgan Chase Bank, N.A. personal bank account. Instead, the actual balance in **WORLEY's** JP Morgan Chase Bank, N.A. personal bank account as of October 26, 2015, was approximately $16,555.34.

    g. **WORLEY** engaged Accounting Firm 1 to prepare a statement of financial condition, which would include a summary of **WORLEY's** net worth including his income, assets, and liabilities as of December 31, 2015, to be given to banks and private equity funds for the purpose of securing loans. The accuracy and truthfulness of the statement of

financial condition depended upon the accuracy and truthfulness of the information **WORLEY** provided to Accounting Firm 1.

      h.    **WORLEY** knowingly gave false, incomplete, and misleading information to Accounting Firm 1, that caused Accounting Firm 1 to produce a statement of financial condition for **WORLEY** on March 4, 2016, which contained material omissions regarding several outstanding debts, existing encumbrances on assets, and materially misrepresented **WORLEY's** net worth.

      i.    **WORLEY** caused Individual C to transmit this false and misleading statement of financial condition to various private equity funds, including CCM, for the purpose of securing loans for **WORLEY** individually, and for corporate entities he owned, operated, controlled, or assisted.

      j.    In some instances, **WORLEY** and the corporate entities he owned, operated, controlled, or assisted defaulted on these loans, causing private equity funds to suffer financial losses.

23.    As a result of this scheme, **WORLEY** fraudulently obtained over $14,000,000 from various private equity funds for himself and for corporate entities he owned, operated, controlled, or assisted.

**Acts in Execution of Scheme:**

### COUNT TWO
### (Wire Fraud)

**The Wiring:**

24.    For example, on or about October 27, 2015, at approximately 1:03 p.m., in the Middle District of Louisiana and elsewhere, **MICHAEL ALLEN WORLEY**, defendant

herein, having devised the scheme described above to defraud, that is, to obtain money and property by means of materially false and fraudulent pretenses, promises, and representations, knowingly transmitted and caused to be transmitted in interstate commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, that is, an email representing that he had delivered or was in the process of delivering personal check numbers 7304 in the amount of $5,000,000, and 7305 in the amount of $4,122,602, respectively, to the United States Treasury on October 27, 2015, to pay taxes due in accordance with the stated purpose of the loan from NCC Financial, LLC, through an electronic wiring between the State of Louisiana and the State of Texas, where the email was received. As **WORLEY** knew, he did not cause either check to be delivered to the United States Treasury. As a result of this and other false and fraudulent representations, NCC wired $7,481,673.44 to a bank account **WORLEY** controlled, giving him control over these funds for his personal enrichment.

The above is a violation of Title 18, United States Code, Sections 1343 and 2.

### FORFEITURE ALLEGATIONS

25. Paragraphs 1 through 24 of this Bill of Information are incorporated herein by reference as factual allegations.

26. Upon conviction of either offense alleged in this Bill of Information, **MICHAEL ALLEN WORLEY**, the defendant herein, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting or derived from, proceeds the defendant obtained directly or indirectly as a result of the violation, including but not limited to a sum of money equal to the amount of the proceeds of the offense.

27. If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of substitute property.

UNITED STATES OF AMERICA, by

*/s/ Brandon J. Fremin*
BRANDON J. FREMIN
UNITED STATES ATTORNEY

*/s/ Peter J. Smyczek*
PETER J. SMYCZEK
ASSISTANT U.S. ATTORNEY

Date: 10/16/2019